[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
On November 8, 1990, the plaintiff, Michael Costello, filed an eight count, amended complaint against the following defendants: Continuing Care Associates, Inc., (hereafter, "CCA"); CCA Oxygen Services, Inc., formerly known as B-Mar Oxygen Services, Inc., (hereinafter, "CCA/B-Mar"); Continuing Care Associates, Inc., d/b/a American Medical Equipment (hereinafter "American Medical Equipment"); and Raymond Dolan, CT Page 9822 d/b/a American Medical Equipment (hereinafter "Dolan").
The plaintiff alleges in his amended complaint that on November 13, 1987, he was transporting liquid oxygen tanks that emitted liquid oxygen gas into the vehicle he was driving, and that as a result, a fire started in the vehicle, resulting in explosions and injury to the plaintiff.
The plaintiff alleges in the first four counts, which assert common law negligence, that the liquid oxygen tanks were owned, controlled and/or maintained by each of the four defendants, respectively, and that the emission of liquid oxygen gas and resulting injury were caused by the negligence of the defendants in failing to maintain and inspect the tanks and their relief valves in various ways.
Counts five through eight are brought as product liability claims pursuant to General Statutes 52-572m, the plaintiff alleging that each of the four defendants was in the business of selling and/or leasing oxygen tanks for public use; that the plaintiff was transporting an oxygen tank sold and/or leased by each of the four defendants; and that the oxygen tank was sold and/or leased in a defective condition unreasonably dangerous to the plaintiff in that the tank failed to provide adequate warnings, instructions and/or safety precaution information. Further, the plaintiff alleges that the oxygen tank was sold and/or leased in a defective condition unreasonably dangerous to the plaintiff because the tank was defectively designed to allow the leakage or venting of the oxygen cylinders at a rapid rate into the vehicle interior.
Dolan's affidavit reveals the following corporate history of the defendants: In August, 1980, Dolan and H. Donald Thumlert purchased B-Mar Oxygen Services, Inc. Dolan and Thumlert formed American Medical Equipment Corporation in September, 1983. In April, 1986, Entretech, Inc. was formed as a holding company for all the stock of B-Mar Oxygen Services and American Medical Equipment. On December 30, 1986, Entretech was merged with CONC Acquisition Corporation, the wholly-owned subsidiary of Continuing Care Associated, Inc. (CCA). On November 10, 1988, the name of B-Mar Oxygen Services, Inc. was changed to CCA Oxygen Services, Inc.
The defendants have answered the amended complaint and asserted eight special defenses, all of which have been denied. CT Page 9823
The defendants filed this motion for summary judgment on November 4, 1991, along with a supporting memorandum of law and the affidavit of Dolan. The plaintiff filed an objection to the defendants' motion for summary judgment on June 15, 1992, along with a supporting memorandum of law and copies of excerpts of deposition testimony of Dolan and H. Donald Thumlert. On June 26, 1992, the defendants filed a reply brief, along with copies of excerpts of deposition testimony of Raymond Dolan.
-I-
The defendants argue, with respect to counts one, three, and four, that CCA, American Medical Equipment, and Dolan owed no duty to plaintiff because none of them owned, controlled or maintained the liquid oxygen tanks involved in the incident.
The plaintiff claims that CCA acquired title and ownership to the liquid oxygen tanks when it purchased CCA/B-Mar in December, 1986, and that CCA controlled the liquid oxygen tanks by managing CCA/B-Mar in an active manner. The plaintiff further argues that American Medical Equipment controlled the tanks because the tanks would be shipped between American Medical Equipment and CCA/B-Mar when there was a shortage of equipment or a need for repair.
"The existence of a duty of care is an essential element of negligence." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375,441 A.2d 620 (1982).
 A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act.
"The existence of a duty is a question of law and `only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand.'" Petriello v. Kalman, 215 Conn. 377,382-83, 576 A.2d 474 (1990), quoting Shore v. Stonington,187 Conn. 147, 151-52, 444 A.2d 1379 (1982). CT Page 9824
Dolan, the officer, director and employee of CCA at the relevant times, attests that from December 30, 1986 through November 13, 1987, the date of the incident, he had no ownership interest in CCA/B-Mar or American Medical Equipment. He further attests that the liquid oxygen tanks in question were not owned, controlled, or maintained by Raymond Dolan, d/b/a American Medical Equipment. The plaintiff has not submitted evidence to contradict these statements and therefore the court may rely on them. Since Raymond Dolan did not own, control or maintain the liquid oxygen tanks involved in the incident in question, we find no basis for charging him with any duty to the plaintiff, under count four, and grant the motion for summary judgment as to count four.
The affidavit of Raymond Dolan establishes that CCA owned CCA/B-Mar, the owner of the tanks. He further attests that neither CCA nor American Medical Equipment were the manufacturer, wholesaler, distributor, retailer, bailor or lessor of the tanks and that they did not control or maintain the tanks in the plaintiff's car.
As to CCA, plaintiff's deposition evidence indicates that the vice president of CCA managed the day to day operations of CCA (B-Mar) thus raising a genuine issue of control. As to American Medical Equipment, the deposition evidence indicates that liquid oxygen tanks were transported between CCA (B-Mar) and American Medical Equipment for purposes of replacement and repair, thus raising a similar issue of control. Accordingly, the motion for summary judgment is denied with respect to counts one and three.
-II-
With respect to counts two and six, the defendants argue that because the plaintiff was an employee of CCA/B-Mar and because the injuries sustained by the plaintiff arose out of and in the course of his employment, his only available remedy is pursuant to the Workers' Compensation Act, General Statutes31-284(a).
The plaintiff responds, in his memorandum of law, that he is not limited to the Workers' Compensation Act because the "dual persona" doctrine permits an action against CCA/B-Mar in this case. CT Page 9825
The plaintiff does not allege that he was injured while working for CCA/B-Mar and states in his memorandum of law that he refers to CCA/B-Mar as the employer defendant because the defendants label themselves in that way. Although Dolan attests that the plaintiff was employed by CCA/B-Mar on the date he was injured, defendants have not met their burden of proving that the plaintiff was injured in the course of his employment with CCA/B-Mar. Accordingly, we cannot determine whether counts two and six are barred by the exclusivity provision of the Workers' Compensation Act and we must deny defendants' motion for summary judgment as to counts two and six.
-III-
With regard to counts five, seven, and eight, the defendants argue that the plaintiff may not recover under the Product Liability Act, General Statutes 52-572m, because CCA, American Medical Equipment, and Raymond Dolan were not "product sellers."
The plaintiff claims that the defendants are "product sellers" because the tanks were leased to customers of CCA/B-Mar and the liquid oxygen itself was sold for customer consumption. General Statutes 52-572m(a) provides that:
 "Product Seller" means any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailors of products who are engaged in the business of leasing or bailment of products.
We find that a question of fact exists as to whether the defendants were "product sellers", and that a further question of fact exists as to which of the defendants were "product sellers."
Defendants Motion for Summary Judgment is granted as to CT Page 9826 count one and denied as to the remaining seven counts.
Wagner, J.